UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                :
GMA ACCESSORIES, INC.,            :
                  Plaintiff,    :        21 Civ. 11227 (LGS)
                                :
        -against-            :        **OPINION AND ORDER**
                                :
NEW SIX LIMITED, et al.,        :
                  Defendants. :
                                :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff GMA Accessories, Inc. brings this action alleging trademark infringement and counterfeiting of its CHARLOTTE mark. The remaining Defendants,[1] New Six Limited and Atallah Group US Inc., assert various affirmative defenses and counterclaims for unfair competition, violation of N.Y. Gen. Bus. Law § 349, cancelation of Plaintiff's mark based on abandonment and fraud, and declaratory judgment for trebled damages and attorneys' fees.

Defendants move to dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(c) or, in the alternative, move for summary judgment on both of Plaintiff's claims and Defendants' counterclaim of abandonment. Plaintiff cross-moves for summary judgment on the same claims and seeks treble damages and attorneys' fees.[2] For the reasons below, Defendants' motion is granted in part and denied in part, and Plaintiff's motion is denied.

---

[1] Final judgment on consent was entered as to Defendants Unit 20 Ltd, Charlotte Knowles Ltd, Dover Street Market New York LLC, TENKEI CORP., Sensu, Inc. and Notre LLC. Claims against Defendants Shopstyle Inc. and Modesens Inc. were voluntarily dismissed.

[2] Plaintiff seeks also to dismiss all counterclaims as untimely, inadequately pleaded and/or for "Defendants' failure to oppose the December 9, 2022 motion to dismiss the [abandonment] counterclaim[]." The arguments are improper because "[i]ssues raised for the first time in a reply brief are generally deemed waived." *See Tardif v. City of New York*, 991 F.3d 394, 404 n.7 (2d Cir. 2021), and Defendants move for summary judgment on the abandonment counterclaim.

## I.   BACKGROUND

The following summary is taken from the parties' Rule 56.1 statements and other submissions on these motions.  The facts are either undisputed or based on evidence in the record.  For Defendants' and Plaintiff's respective motions, all reasonable inferences are drawn in favor of the non-moving party.

Plaintiff manufactures women's fashion items and has obtained four trademark registrations for its CHARLOTTE trademark: U.S. Reg. No. 2,217,341 issued January 12, 1999, U.S. Reg. No. 2,535,454 issued February 5, 2002, U.S. Reg. No. 3,453,664 issued June 24, 2008, and U.S. Reg. No. 5,700,815 issued March 19, 2019 (the "Registered Mark").  The registrations cover certain categories of clothing and accessories, including footwear, hats, scarves, gloves, socks and handbags.  Plaintiff has since sued many manufacturers, retailers and other providers over the use of the term "Charlotte."

Defendant Atallah Group US Inc. ("Atallah") owns the online e-commerce platform SSENSE, a multi-brand retailer that sells designer fashion and high-end streetwear.  From around 2018 to 2021, Atallah sold on its website "Charlotte Knowles" branded clothing, the allegedly infringing products.

Defendant New Six Limited ("New Six") owned the Charlotte Knowles brand by assignment and manufactured, branded and sold Charlotte Knowles clothing.  Ms. Knowles -- the designer of Charlotte Knowles -- since rebranded her clothing to "KNWLS."

## II.   LEGAL STANDARD

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Electra v. 59 Murray Enters.*, 987 F.3d 233, 248 (2d Cir. 2021). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *Electra*, 987 F.3d at 248. When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences in favor of the non-moving party. *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

## III. DISCUSSION

### A. Trademark Infringement

Plaintiff and Defendants cross-move for summary judgment on Plaintiff's trademark infringement claim. As no reasonable jury could find for Plaintiff based on the record evidence, Defendants' motion for summary judgment on Plaintiff's trademark claim is granted.

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d

74, 84 (2d Cir. 2020).[3]  Defendants do not dispute, for the purposes of Plaintiff's trademark infringement claim, that the CHARLOTTE mark is a valid mark entitled to protection.

To evaluate claims of consumer confusion, courts in the Second Circuit balance the eight factors set out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).  *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, No. 21 Civ 7922, 2023 WL 1966206, at *5 (S.D.N.Y. Feb. 13, 2023).  They are: "[t]he strength of [the plaintiff's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the [plaintiff] will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers."  *Polaroid*, 287 F.2d at 495. Six of these factors directly relate to the likelihood of confusion.  *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).  The other two -- good faith and the quality of defendant's products -- are more pertinent to other issues, "such as harm to the plaintiff's reputation and choice of remedy."  *Id.* at 147.  While factual disputes are resolved in favor of the non-moving party, the weight accorded to each factor and the ultimate balancing of all the factors are questions of law.  *See, e.g.*, *Souza v. Exotic Island Enters, Inc.*, 68 F.4th 99, 109 (2d Cir. 2023); *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 328, 333 (2d Cir. 2020) (for each factor, "set[ting] out the District Court's rulings, and then our own assessment of the factor" and giving "conclusions with respect to each factor" on de novo review); *RiseandShine Corp. v. PepsiCo. Inc.*, No. 21 Civ 6324, 2023 WL 4936000, at *3-4 (S.D.N.Y. Aug. 2, 2023) (collecting Second Circuit caselaw).

---

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

###### 1.    Strength of the Mark (Factor 1)

The first factor favors Defendants.  The strength of a trademark "is analyzed based on two components: (1) the degree to which [the mark] is inherently distinctive; and (2) the degree to which it is distinctive in the marketplace." *Car-Freshner Corp.*, 980 F.3d at 329.  "The more unusual and distinctive a particular mark, the more likely the consumer will assume, upon seeing it essentially replicated, that the newly observed user is the same as, or affiliated with, the originally observed user." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 41 (2d Cir. 2016).  Inherent distinctiveness is assessed using four categories of marks that indicate increasing distinctiveness and protectability: (1) generic, (2) descriptive, (3) suggestive and (4) arbitrary or fanciful.  *Car-Freshner Corp.*, 980 F.3d at 329; *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 302 (S.D.N.Y. Sept. 28, 2021).  A descriptive mark is "one that tells something about a product, its qualities, ingredients or characteristics." *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993).  A suggestive mark suggests the product, "though it may take imagination to grasp" its nature.  *Id.*  An arbitrary mark has an actual dictionary meaning, but that meaning does not describe the product, and a fanciful mark is a made-up name.  *Id.* at 1075-76.

Plaintiff asserts that its CHARLOTTE mark is an arbitrary mark and is therefore strong and deserving of the highest degree of protection.  For trademark analysis, personal names "are generally regarded as descriptive terms which require proof of secondary meaning." *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir. 1988); *accord Hello I Am Elliot, Inc. v. Sine*, No. 19 Civ. 6905, 2021 WL 1191971, at *2 (S.D.N.Y. Mar. 30, 2021).  In the context of Plaintiff's products, rather than conveying any "descriptive impression" that a particular individual named Charlotte is or was associated with Plaintiff, *see 815 Tonawanda St.*,

842 F.2d at 648, Plaintiff's use of the common female name "Charlotte" is suggestive of the women's fashion items and accessories it sells under that mark.  *See GMA Accessories, Inc. v. Croscill, Inc.*, No. 6 Civ. 6236, 2008 WL 591803, at *4 (S.D.N.Y. Mar. 3, 2008) ("GMA's use of the common female name 'Charlotte' is clearly suggestive of the women's fashion items and accessories it sells under that mark."); *see generally Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999) (observing that suggestive marks require "imagination, thought and perception to reach a conclusion as to the nature of goods"); *GMA Accessories, Inc. v. BOP LLC*, 507 F. Supp. 2d 361, 364 (S.D.N.Y. 2007) (finding that the Charlotte mark is "arbitrary as used in connection with its apparel products"), *abrogated on other grounds by GMA Accessories, Inc. v. BOP LLC*, No. 7 Civ. 3219, 2008 WL 762782 (S.D.N.Y. Mar. 20, 2008).  However, "Charlotte" is a somewhat weak suggestive mark.  "A finding of suggestiveness does not guarantee a determination that the mark is a strong one."  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 121 (2d Cir. 2022).  Like weak descriptive marks, Plaintiff's mark does not focus on source identification, but rather seeks "to secure the exclusive right to an advertising message [here, femininity] that is built into the trademark."  *Id.*  Plaintiff's contention that its mark is arbitrary and therefore strong is unpersuasive.  *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:11 (5th ed. 2023) (observing that arbitrary marks comprise only those words that are "in common linguistic use but which, when used with the goods . . . in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods").  As Defendants point out, the extensive and prior use of the word "Charlotte" by numerous third parties significantly undercuts Plaintiff's claim of strength.  Defendants identify forty-seven existing trademark registrations containing "Charlotte," all of which are used for clothing and/or jewelry.  In particular, Charlotte Russe, a national retailer, began using its

6

"Charlotte Russe" mark on women's fashion items and accessories more than twenty years before Plaintiff's first use of its CHARLOTTE mark.  *See Time*, 173 F.3d at 118 ("The use of part or all of the mark by third parties weakens its overall strength.").

Plaintiff's somewhat weak mark has not acquired strength through an acquired secondary meaning.  *See Virgin Enters. Ltd.*, 335 F.3d at 147 ("The second sense of the concept of strength of a mark is 'acquired distinctiveness,' i.e., fame, or the extent to which prominent use of the mark in commerce has resulted in a high degree of consumer recognition."); *Guthrie Healthcare Sys.*, 826 F.3d at 41 n.4 (2d Cir. 2016) ("The theory is that a mark similar to a famous mark is more likely to cause confusion, or at least more likely to cause a more widespread confusion, than a mark similar to a relatively unknown one.").  Plaintiff proffers no evidence of marketplace recognition.  Plaintiff suggests that it "markets to consumers on its website" and "was making use of the mark in its showroom, in retail stores <u>and</u> on-line, with evidence of on-line advertising at least until 2019 and resuming on-line sales and advertising in 2022."  Although sales and advertising may be probative of secondary meaning, Plaintiff provides no evidence of the extent of its advertising or marketplace presence relative to the market as a whole to support the inference that CHARLOTTE has become a distinctive reference to Plaintiff's products in consumers' minds.

Plaintiff's CHARLOTTE mark is a somewhat weak suggestive mark.  The lack of evidence establishing any commercial recognition of the mark means that, as a matter of law, CHARLOTTE is a "relatively weak mark[ ] in the place where it counts: the marketplace."  2 *McCarthy on Trademarks* § 11:80; *see also Croscill, Inc.*, 2008 WL 591803 at *5; *but see GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 467 (S.D.N.Y. 2011) ("reasonable factfinders could reach differing conclusions on whether the purchasing public recognizes the

[CHARLOTTE] mark"), *aff'd sub nom. GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 558 F. App'x 116 (2d Cir. 2014).

## 2.    Similarity of the Marks (Factor 2)

The second factor is the degree of similarity between the two marks.  This factor weighs slightly in Atallah's favor, and is neutral as between Plaintiff and New Six.

In assessing the similarity of two-word marks, courts begin by examining their text, typeface and general appearance.  *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996); *accord Croscill, Inc.*, 2008 WL 591803, at *5.  "[A]n inquiry into the degree of similarity between two marks," however, "does not end with a comparison of the marks themselves."  *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 458 (2d Cir. 2004); *accord Jackpocket, Inc. v. Lottomatrix NY LLC*, No. 22 Civ. 5772, 2022 WL 17733156, at *39 (S.D.N.Y. Dec. 7, 2022).  Indeed, courts analyze "the overall impression created by the [marks] and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers."  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 106 (2d Cir. 2009); *accord A&E Television Networks, LLC v. Big Fish Ent., LLC*, No. 22 Civ. 7411, 2023 WL 4053871, at *17 (S.D.N.Y. June 16, 2023).  The mere fact that the same word was admittedly used is insufficient to create similarity.  *See Medici Classics Prods. LLC v. Medici Grp. LLC*, 590 F. Supp. 2d 548, 554 (S.D.N.Y. 2008) (parties' common use of the word "Medici" "does not necessarily make the marks similar for purposes of assessing confusion under a *Polaroid* analysis").

Because the CHARLOTTE mark is registered solely as a word mark, Plaintiff relies on the use of the word "Charlotte" alone.  But even word marks must be viewed in context, and in their entirety.  *See Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 133 (2d Cir. 2004)

("Each mark must be compared against the other as a whole; juxtaposing fragments of each mark does not aid in deciding whether the compared marks are confusingly similar."); *accord BS Premium Holdings, LLC v. Premium Sweets & Desserts Inc.*, No. 21 Civ. 4872, 2022 WL 604064, at *4 (E.D.N.Y. Feb. 28, 2022).  Plaintiff presents its mark in a white, stylized and lower-case script, with the letter "o" occasionally colored red.  By contrast, on Atallah's website, the "Charlotte Knowles" mark was used only in black, block lettering and displayed with hundreds of other brands, identifying the brand name in a "descriptive fashion."  *See Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 396 (2d Cir. 2021) (summary order) (agreeing with the district court that the parties' marks were unlikely to confuse consumers where plaintiff's mark would ordinarily appear on its own website "or on third-party websites, potentially alongside other companies' marks").  This factor weighs somewhat in Atallah's favor.

As to New Six, neither side submits any pictures, photocopies or other visual representations of the label used on Charlotte Knowles clothing.  There is no evidence of the font in which the word was written, nor of the color, nor of any other characteristics.  Without evidence sufficient for a comparison, and drawing inferences in favor of the non-moving party, this factor is neutral as between Plaintiff and New Six.

In response, Plaintiff alleges that Defendants withheld "documents showing how their mark appeared in their marketing/display/advertising," which should "result in preclusion of Defendants' ability to oppose the allegation that the marks are similar."  The argument is unpersuasive.  Plaintiff fails to articulate how, or to what extent, it is prejudiced and fails to explain why Atallah's selection of a "handful of documents showing how the mark appeared on products and dates" is not representative of the website over the relevant period.

### 3.        Proximity of the Products (Factor 3)

The third factor is the proximity of the products and their competitiveness with each other.  "The proximity factor can apply to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." *Guthrie Healthcare Sys.*, 826 F.3d at 39.  Market proximity looks at "whether and to what extent the two products compete with each other," considering "the nature of the products themselves and the structure of the relevant market." *Cadbury Beverages, Inc.*, 73 F.3d at 480.

Although the respective products fall within the same general class of women's clothing and accessories, they did not compete and were not proximate.  The parties' respective products are not comparable in quality and price.  *See, e.g.*, *Joules Ltd. v. Macy's Merch. Grp., Inc.*, 695 F. App'x 633, 637 (2d Cir. 2017) (summary order) (disagreeing with the district court that the parties' products were competitively proximate because "[a]lthough both product lines feature clothing of comparable quality and price," the majority of plaintiff's sales were from products that defendant did not carry).  Charlotte Knowles clothing was high-end, and the pieces took substantial time to make, develop and engineer.  Most of the fabric was sourced from Italy, and the clothing was promoted through a runway show at London Fashion Week and sold in Paris showrooms.  The clothing was then sold to consumers via shops and online stores, including on the SSENSE website, which sells designer fashion and high-end streetwear.  Retail prices for Charlotte Knowles ranged from $286 to $5,207 (converted from British pounds).

Plaintiff offers substantially lower quality, lower cost and more generic clothing and accessories.  Charlotte products are, or have been, sold at Plaintiff's showroom in New York City, on Plaintiff's website and at various retailers, including Bloomingdales, Lord & Taylor, Kohl's, Century 21 and Burlington.  They are not sold, notably, on SSENSE or at other

comparable high-end shops and online stores.  Plaintiff's socks, slippers, shoes, jewelry, scarves and bathrobes are significantly dissimilar to the designer clothing of Charlotte Knowles.  For example, under the Charlotte brand, a twenty-pack set of girl's socks sold for $6.97, and a twenty-piece set of girl's hair clips for $6.99, both for a fraction of a Charlotte Knowles's product's price point.  The respective products of the parties simply did not "appeal[] to [the] same consumers." *See id.*

Plaintiff submits minimal evidence to the contrary and asserts merely that the products "are in the same general class and indeed are for the precise goods set forth in [Plaintiff's] trademark registrations.  All parties sell clothing, footwear, headgear and handbags."  The argument is inapposite.  That goods fall within the same general class makes the use of similar designations "more likely" to cause confusion, but is not itself dispositive.  *See Jackpocket, Inc.*, 2022 WL 17733156, at *41.

Based on the foregoing, and even construing the facts in favor of Plaintiff, no reasonable jury could find that the respective products competed with one other.  This factor weighs strongly in favor of Defendants.  Plaintiff's request to preclude Defendants "from arguing that the products are not proximate," based on alleged discovery violations, is unpersuasive for substantially the same reasons discussed above.

### 4. Bridging the Gap (Factor 4)

"Bridging the gap refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005).  "[I]f the owner of a trademark can show that it intends to enter the market of the alleged infringer, that showing helps to establish a future likelihood of confusion as to source." *Lois Sportswear, U.S.A., Inc. v. Levi*

*Strauss & Co.*, 799 F.2d 867, 874 (2d Cir. 1986); *accord Enchante Accessories, Inc. v. Turko Textiles, LLC*, No. 19 Civ. 581, 2022 WL 5177808, at *9 (S.D.N.Y. July 15, 2022), *report and recommendation adopted in part*, 2022 WL 4181791 (S.D.N.Y. Sept. 12, 2022).  This factor reflects that "trademark laws are designed in part to protect the senior user's interest in being able to enter a related field at some future time."  *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 874; *accord Enchante Accessories, Inc.*, 2022 WL 5177808, at *9.

As explained above, the products were sold in separate markets.  Plaintiff has sold its Charlotte clothing, hats, scarves and other such products since as early as 1999.  There is no record evidence that Plaintiff plans to enter Defendants' market and sell the same kinds of luxury women's clothing -- expensive, and on high-end retail platforms.  Plaintiff suggests only that it has "already bridged any arguable gap by continuing its expansion into direct to consumer sales."  But Plaintiff's reference to "consumer sales" is inapt, as it is not the relevant market (here, high-end women's fashion).  *See, e.g.*, *Pan Am. World Airways, Inc. v. Panamerican Sch. of Travel, Inc.*, 648 F. Supp. 1026, 1036 (S.D.N.Y. 1986) (rejecting plaintiff's characterization of the relevant market as "too general").  Even construing the record in favor of Plaintiff, this factor weighs in favor of Defendants.

### 5.   Actual Confusion (Factor 5)

The fifth *Polaroid* factor is actual confusion.  "[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."  *Guthrie Healthcare Sys.*, 826 F.3d at 45 (finding a likelihood of confusion and broadening the scope of the district court's permanent injunction despite no evidence of actual confusion); *accord Reply All Corp.*, 843 F. App'x at 397.  Nevertheless, "[i]nstances of actual confusion resulting from a

junior user's use of a mark similar to a senior user's can be powerful evidence supporting a likelihood of confusion." *Guthrie Healthcare Sys.*, 826 F.3d at 44.

Plaintiff concedes that it has not identified any actual confusion in the marketplace. While "evidence of actual confusion is not necessary to prove trademark infringement," *Reply All Corp.*, 843 F. App'x at 397, here, Plaintiff and Defendants have co-existed in the marketplace for over three years.  Extended coexistence without actual confusion weighs against a likelihood of confusion.  *See, e.g.*, *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 419 (S.D.N.Y. 2002).  That "Defendant[s'] own sales records reflect meaningful sales taking place during a very small window, approximately November 2020 to November 2021," has little, if any, relevance.  Given the lack of any record evidence showing actual confusion, despite over three years of coexistence, this factor weighs in favor of Defendants.

### 6.    Bad Faith (Factor 6)

The sixth factor is the defendants' bad faith in adopting the imitative term.  This factor, along with the quality of the products, is not "of high relevance to the issue of likelihood of confusion."  *Virgin Enters. Ltd.*, 335 F.3d at 151; *accord Lopez v. Adidas Am., Inc.*, No. 19 Civ. 7631, 2020 WL 2539116, at *12 n.9 (S.D.N.Y. May 19, 2020).  Rather, "[a] finding that a party acted in bad faith can affect the court's choice of remedy or can tip the balance where questions are close."  *Virgin Enters. Ltd.*, 335 F.3d at 151.  Nevertheless, "subjective issues such as good faith are singularly inappropriate for determination on summary judgment."  *Tiffany & Co.*, 971 F.3d at 88.

Here, Defendants assert that Atallah's good faith is evidenced by the fact that (1) "Charlotte Knowles was not Atallah's brand -- it is one of many hundreds of brands that have appeared on the Atallah retail platform," (2) "it is undisputed that Atallah did not 'adopt' any

mark, it simply permitted Charlotte Knowles to showcase her elite clothing on Atallah's SSENSE website under the <u>personal name of the designer at issue</u>, as it does with hundreds of other brands" and (3) "Atallah testified that it never heard about Plaintiff or its trademark."

Although Plaintiff contests in part the factual basis to these claims, Plaintiff offers no argument of its own.  Neither side offers evidence or argument as to Defendant New Six.  This factor is therefore neutral.

### 7.     Quality of the Products (Factor 7)

The seventh factor is the quality of the respective products.  This factor may be relevant for two reasons: on the one hand, "[if] defendant's products or services are inferior to plaintiff's, [they] thereby tarnish[] plaintiff's reputation if consumers confuse the two," while on the other, "[p]roducts of equal quality may tend to create confusion as to source because of that very similarity of quality."  *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 142 (2d Cir. 1999); *accord Jackpocket, Inc.*, 2022 WL 17733156, at *51.

As detailed above, Defendants submit evidence that the Charlotte Knowles products were of superior quality to Plaintiff's -- i.e, made from better material, promoted in high-profile trade shows, presented in "elite" showrooms and sold at a significantly higher price.  Plaintiff offers no evidence or argument to the contrary.  Because nothing about the quality of the respective products supports an inference of consumer confusion, this factor weighs in favor of Defendants.

### 8.     Buyers' Sophistication (Factor 8)

The eighth factor is the buyers' sophistication.  "Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in . . . trade marks will result in confusion concerning the source or sponsorship of the product."  *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992); *accord Cree, Inc.*

*v. Xiu Ping Chen*, No. 16 Civ. 1065, 2017 WL 3251580, at *7 (E.D.N.Y. July 28, 2017).

"Likewise, the greater the value of an article, the more careful the typical consumer can be

expected to be." *Tiffany & Co.*, 971 F.3d at 90.  Conversely, "consumers of relatively

inexpensive goods and consumers who make impulsive purchases are generally considered

unsophisticated."  *City of New York v. Henriquez*, No. 22 Civ. 3190, 2023 WL 2186340, at *23

(E.D.N.Y. Feb. 23, 2023); *see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 219

(2d Cir. 2003) (finding "ordinary consumers of inexpensive retail products" likely to "be

confused by similar labels bearing similar marks").  But "price alone is not determinative of the

care a consumer will take in making purchases," *Starbucks Corp.*, 588 F.3d at 119, and the

"touchstone" is "the general impression that is left with the ordinary consumer," *The Sports

Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 965 (2d Cir. 1996); *accord Edible Arrangments,

LLC v. Provide Com., Inc.*, No. 14 Civ. 250, 2016 WL 4074121, at *10 (D. Conn. July 29, 2016).

Where, as here, the parties have not submitted any expert opinions or surveys providing direct

evidence of consumer sophistication, indirect evidence of sophistication may be derived from the

record.  *See Star Indus.*, 412 F.3d at 390; *accord MidCap Bus. Credit, LLC*, 2023 WL 1966206,

at *9.

   Defendants submit that their buyers are highly sophisticated purchasers -- "wealthy

young women who want to look exciting and different" -- based on the price, quality and "niche"

nature of Charlotte Knowles clothing.  The Court agrees.  *See, e.g.*, *Louis Vuitton Malletier, S.A.

v. Hyundai Motor Am.*, No. 10 Civ. 1611, 2012 WL 1022247, at *25 (S.D.N.Y. Mar. 22, 2012)

(finding consumers of Louis Vuitton products to be sophisticated given the "market niche").  By

comparison, shopping for casual apparel and low-end accessories -- i.e., Plaintiff's products --

does not require a heightened degree of sophistication.  *See, e.g.*, *THOIP v. Walt Disney Co.*, 736

F. Supp. 2d 689, 714-15 (S.D.N.Y. 2010) (although a consumer "can be expected to examine the shirt, consider alternatives, and even try it on[,]" the purchase of a "relatively inexpensive [t-shirt does] not call for any degree of sophistication"); *Phillips-Van Heusen Corp. v. Calvin Clothing Co.*, 444 F. Supp. 2d 250, 257 (S.D.N.Y. 2006) ("[T]he average clothing customer is not particularly sophisticated."). Even construing the record in Plaintiff's favor, this factor weighs in favor of Defendants.

         **9.**     **Overall Likelihood of Confusion**

      "The evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather a court should focus on the ultimate question of whether consumers are likely to be confused." *Tiffany & Co.*, 971 F.3d at 85. Having applied the *Polaroid* factors, the Court finds that the record evidence -- considered in the aggregate and construed in favor of Plaintiff -- is insufficient for a reasonable jury to conclude that the products in question are sufficiently similar to create a likelihood of confusion as to the source of the goods. *See Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 271 (2d Cir. 2021) ("A plaintiff must show a probability of confusion, not a mere possibility, affecting numerous ordinary prudent purchasers."). Six of the eight *Polaroid* factors -- including one of the "most significant" factors, strength of the mark, *see Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987); *accord JUUL Labs, Inc. v. Greenpoint Vape & Tobacco Shop Inc.*, No. 21 Civ. 5779, 2022 WL 17780645, at *4 (E.D.N.Y. Aug. 19, 2022) -- favor Defendants. The remaining two factors -- the similarity of the marks and Defendants' bad faith -- are at best neutral for Plaintiff and, more importantly, are substantially unsupported by any evidence submitted by Plaintiff. Plaintiff (and Defendants) blame the scant record on alleged discovery violations, but no movant is excused from its burden of raising a material issue

of fact in order to overcome a motion for summary judgment.  As Plaintiff has failed to come

forward with sufficient reliable evidence showing that consumers were likely to be misled by

Defendants' use of the term "Charlotte," Defendants' cross-motion for summary judgment as to

Plaintiff's trademark infringement claim is granted.

### B.    Counterfeiting

The parties cross-move for summary judgment on Plaintiff's counterfeiting claim brought

under 15 U.S.C. § 1114(1)(a).  Under the Lanham Act, "a counterfeit is a spurious mark which is

identical with, or substantially indistinguishable from, a registered mark." *Tiffany & Co.*, 971

F.3d at 95; *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 314-15 (2d Cir. 2013) (finding mark

not counterfeit where "consumers . . . would recognize the differences . . . from a cursory visual

inspection" based on different "font, color, and capitalization"); *TechnoMarine SA v. Jacob

Time, Inc.*, 905 F. Supp. 2d 482, 488-89 (S.D.N.Y. 2012) (dismissing counterfeiting claim where

the defendants were not "trying to [dupe] or actually duping customers into the false belief they

were purchasing the real thing" through ploys such as "falsified logos, inferior workmanship and

materials, and combinations of colors and markings not found in a non-counterfeit product.").

"[C]ounterfeiting is merely an aggravated form of infringement." *Tiffany & Co.*, 971 F.3d at 95;

*accord Easter Unlimited, Inc. v. Rozier*, No. 18 Civ. 6637, 2021 WL 4409729, at *26 (E.D.N.Y.

Sept. 27, 2021); *see also Energizer Brands, LLC v. My Battery Supplier, LLC*, 529 F. Supp. 3d

57, 62 (E.D.N.Y. 2021) ("Consumer confusion over counterfeit goods is typically measured by

the nine *Polaroid* factors.").

There is no evidence that Defendants' Charlotte Knowles mark is "identical with" or

"substantially indistinguishable" from Plaintiff's registered mark, s*ee Grazette v. Bitcoin of Am.,

LLC*, No. 19 Civ. 4837, 2020 WL 6789352, at *10 (E.D.N.Y. Sept. 30, 2020), or that either

17

Defendant "falsified logos" or tried to "dup[e]" any customer with fake goods, *see TechnoMarine SA*, 905 F. Supp. 2d at 488-89.  Plaintiff merely alleges, without citing to the record, that Defendant New Six "used the same type style, font and marketing" including "the shortened version CHARLOTTE to refer to their goods both at the wholesale and retail levels." Plaintiff's excuse that it was "deprived [by Defendants] . . . of the very evidence it needs to obtain dispositive relief on this claim" is unpersuasive for reasons explained above.  Having determined that no trademark infringement exists, and finding that no reasonable jury could conclude that Defendants' Charlotte Knowles mark was a counterfeit, Defendants' cross-motion for summary judgment on the counterfeiting claim is granted.

### C.    Rule 12(c)

As Defendants' cross-motion for summary judgment on Plaintiff's claims is granted, Defendants' request to dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(c) is denied as moot.

### D.    Abandonment

Plaintiff and Defendants cross-move for summary judgment on Defendants' counterclaim of abandonment, whereby Defendants seek to cancel Plaintiff's Registered Mark.  "The abandonment doctrine derives from the well-established principle that trademark rights are acquired and maintained through use of a particular mark." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir. 2007); *accord Pado, Inc. v. SG Trademark Holding Co. LLC*, 527 F. Supp. 3d 332, 341 (E.D.N.Y. 2021).  "[A]bandonment is not only an affirmative defense to an infringement action; it is a ground for cancelling a federally registered mark." *ITC Ltd.*, 482 F.3d at 146.  Under the Lanham Act, the owner of a trademark abandons its rights in the mark when its use of the mark "has been discontinued with intent not to resume such use" or when its

conduct causes the mark to become "generic."  15 U.S.C. § 1127.  "Once abandoned," a trademark "returns to the public domain" and may be used by persons other than the owner.  *ITC Ltd.*, 482 F.3d at 147.

To establish abandonment under 15 U.S.C. § 1127, an alleged infringer must establish both (i) "non-use of the [mark] by the legal owner," and (ii) "no intent by that person or entity to resume use in the reasonably foreseeable future."  *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 169 (2d Cir. 2016).  The party asserting an abandonment defense "bears the burden of persuasion" with respect to both elements.  *ITC Ltd.*, 482 F.3d at 147.

The Lanham Act provides that non-use of a mark for three consecutive years constitutes "prima facie evidence of abandonment."  15 U.S.C. § 1127.  Where a party moves for summary judgment that a mark has been abandoned, and establishes such a prima facie case of abandonment, the nonmovant is required "to come forward only with such contrary evidence as, when viewed in the light most favorable to [the nonmovant], would permit a reasonable jury to infer that it had not abandoned the mark."  *ITC Ltd.*, 482 F.3d at 149.  Specifically, the trademark owner must "adduce sufficient evidence to permit a reasonable jury to conclude that, in the three-year period of non-use," it "nevertheless maintained an intent to resume use of its registered mark in the reasonably foreseeable future."  *Id.*  "The ultimate burden of persuasion on the issue of abandonment," therefore, "remains at all times with the alleged infringer."  *Id.* at 148.  "[A]bandonment, being a forfeiture of a property interest, should be strictly proved."  *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *accord George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 646 (S.D.N.Y. 2014).

Defendants offer three arguments in support of the claim that Plaintiff abandoned its CHARLOTTE trademark: (1) Plaintiff's refusal to identify the goods it was using in commerce

between 2018 and 2022, (2) the Trademark Trial and Appeal Board ("TTAB")'s previous finding that Plaintiff had abandoned Trademark Registration Nos. 2,534,454 and 3,922,088 (the "Charlotte Olympia Proceeding") and (3) Plaintiff's failure to produce in this case any of the documents that the TTAB stated would be needed to show use in commerce, and the TTAB's finding that the purported sales documents Plaintiff did produce here were insufficient.

First, Defendants' reliance on the Charlotte Olympia Proceeding and "TTAB's well reasoned findings, rendered after four years of litigation," is neither controlling nor persuasive here since -- as Defendants concede -- the June 15, 2017, TTAB decision was subsequently vacated.  Second, a dispute of fact exists as to the commercial use of Plaintiff's CHARLOTTE mark between 2018 and 2022, and/or as to whether Plaintiff intended to resume use during the "short break" before "resumption of direct to consumer sales in 2022"; the parties vigorously dispute this issue based on sales records, witness testimony and investigative reports.[4] Accordingly, the parties' cross-motions on the counterclaim of abandonment are denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** on the trademark infringement and counterfeiting claims, and **DENIED** on the abandonment counterclaim.  Defendants' motion to dismiss the Third Amended Complaint under Rule 12(c) is **DENIED** as moot.

Plaintiff's motion for summary judgment is **DENIED** as to all claims.  Plaintiff's motion for attorneys' fees and trebled damages is **DENIED** as moot.

---

[4] On the issue of non-use, the parties cite the "Marksmen investigative reports."  These reports were not filed on the docket or produced to the Court in their entirety, but are quoted in the parties' papers and Rule 56.1 statements.  Such excerpts, and other evidence in the record, show an issue of fact as to non-use, regardless of the full content of the reports.

For clarity, the surviving claims are Defendants' counterclaims for unfair competition, violation of N.Y. Gen. Bus. Law § 349, cancelation of Plaintiff's mark based on abandonment and fraud, and declaratory judgment for treble damages and attorneys' fees.

By **October 10, 2023**, the parties shall file a joint letter with proposed next steps in this action, including their respective positions on whether cross-motions for sanctions, as anticipated by the Order dated December 9, 2022, are still appropriate in light of this decision.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 312 and 322.

Dated: September 26, 2023
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE